Exhibit A



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed: COMPLAINT**
**September 9, 2024 15:42**

By: MARITA I. RAMIREZ 0101882

Confirmation Nbr. 3267663

S.M., ON BEHALF OF HERSELF AND ALL OTHERS                    CV 24 103506

vs.

ATHENA BITCOIN, INC., ET AL                    **Judge:**  JEFFREY P. SAFFOLD

**Pages Filed:**  25

# IN THE COMMON PLEAS COURT
## CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| **S.M., on behalf of herself and all others similarly situated**<br>℅ DANNLAW<br>15000 Madison Ave.<br>Lakewood, OH 44107 | **CASE NO.**<br><br>**JUDGE**<br><br>**MAGISTRATE JUDGE**<br><br>**<u>COMPLAINT FOR DAMAGES</u>**<br><br>**JURY DEMAND ENDORSED HEREON** |

       Plaintiff,

v.

**ATHENA BITCOIN, INC.**
℅ Incorp. Services, Inc., Reg. Agent
9435 Waterstone Boulevard, Suite 140
Cincinnati, Ohio 45249

And

**GENESIS COIN, INC.**
℅ Andrew Barnard, CEO
1541 Sunset Drive, Suite 202
Coral Gables, Florida 33143

And

**HEIGHTS TOBACCO, INC. d/b/a
DISCOUNT TOBACCO & BEVERAGE**
℅ Michael Brady, Reg. Agent
744 Richmond Road
Richmond Heights, Ohio 44143

And

**HEIGHTS MECHANICAL, INC.**
℅ Martin J. Keenan, Reg. Agent
870 The Statler Building
Cleveland, Ohio 44101

       Defendants.

Plaintiff, S.M. ("Plaintiff"), and for her Complaint for Damages against Defendants,

Athena Bitcoin, Inc. ("Athena") and Genesis Coin, Inc. ("Genesis") (collectively, the "Bitcoin

Defendants"), and Heights Tobacco, Inc. d/b/a Discount Tobacco & Beverage ("Discount Tobacco") and Heights Mechanical, Inc. ("Heights Mechanical") (collectively, the "Store Defendants") hereby states as follows:

## INTRODUCTION

1.      Elder financial scams are well-known in the financial services industry.

2.      The Federal Trade Commission ("FTC") reported that in 2022 alone, elder financial scams accounted for a reported loss of $1.6 billion, an increase from the reported $1 billion lost due to elder financial scams in 2021.[1]

3.      The Consumer Financial Protection Bureau reported in February 2019 that an estimated $2.9 billion to $36.5 billion is lost every year to financial exploitation of older adults.[2] The Bureau reported that "Since 2013, financial institutions have reported to the federal government over 180,000 suspicious activities targeting older adults, involving a total of more than $6 billion. These reports indicate that financial exploitation of older adults by scammers, family members, caregivers, and others is widespread in the United States." *Id.*

4.      Many forms of elder financial scams involve transactions centered upon untraceable cryptocurrency, such as Bitcoin.

5.      The FTC reported that between January 2021 and June 2022, more than 46,000 persons reported they had been victims of cryptocurrency scams, amounting to losses of more than

---

[1] Federal Trade Commission, Fighting fraud against older adults (Oct. 18, 2023) https://consumer.ftc.gov/consumeralerts/2023/10/fighting-fraud-against-olderadults#:~:text=While%20younger%20people%20were%20still,%241%20billion%20the%20year%20before. (last visited Aug. 27, 2024).

[2] Consumer Financial Protection Bureau, Suspicious Activity Reports on Elder Financial Exploitation: Issues and Trends (Feb. 2019) https://files.consumerfinance.gov/f/documents/cfpb_suspicious-activity-reports-elder-financial-exploitation_report.pdf(consumerfinance.gov). (last visited Aug. 27, 2024).

$1 billion, the reported median loss of which was $2,600.[3] The most common cryptocurrency the victims reported paying to scammers Bitcoin was involved in 70% of the scams. *Id.*

6.      Elder financial scams involving cryptocurrency take a number of forms. One such scam, pertinent to this case, involves a scammer impersonating the victim's bank, the government, a utility company, or relative via the telephone. The scammer convinces the victim of an artificial problem requiring urgent action, and further convinces the victim that the only way to resolve the problem is to deposit cash into a cryptocurrency-vending Automatic Teller Machine ("ATM"), which converts the victim's U.S. Dollars into untraceable cryptocurrency, and to transfer the Bitcoin to a "secure" Bitcoin wallet. *Id.* The scammer then sends the user a QR code and instructs the user to hold the QR code up to the ATM camera, but the QR code is embedded with the scammer's Bitcoin wallet address, and so the Bitcoin is deposited directly into the scammer's online Bitcoin wallet. *Id.* According to the FTC, the median individual reported loss for persons in their 70s involved in cryptocurrency scams was $11,708. *Id.*

7.      Despite having knowledge that Athena ATMs are exploited by criminals to facilitate illegal activity such as fraud, money laundering, and scams, including cryptocurrency ATM scams, Defendants fail to prevent, intercept, and/or mitigate the elder financial scams involving its ATMs.

8.      By recognizing the prevalence and severity of elder financial scams involving cryptocurrency and Athena ATMs, and by holding themselves out to the public and their customers that it "ensures safe and secure banking [...]", Defendants assumed a duty to ensure that their efforts to prevent, intercept, and mitigate elder financial abuse through its ATMs were reasonable.

---

[3] Federal Trade Commission, Reports show scammers cashing in on crypto craze (June 3, 2022) https://www.ftc.gov/news-events/data-visualizations/data-spotlight/2022/06/reports-show-scammers-cashing-crypto-craze.

9.      However, Defendants make no meaningful efforts to intervene in such scams. As such, Athena ATMs continue to be used in cryptocurrency scams, money laundering, and other illegal transactions.

10.     The Defendants are capable of implementing effective and sufficient checks and procedures both at the ATMs and internally that would intervene, prevent, mitigate, or deter the use of the ATMs in scams such as the one in this case, but knowingly choose not to adopt effective checks or balances because doing so would thwart a substantial volume of their business and the profits gained from every dollar inserted into the ATM.

6.      The results are devastating. Due to the Defendants' negligent, reckless, and knowing failure and refusal to implement appropriate and sufficient checks and procedures to prevent, intervene, mitigate, or deter the use of the ATMs in fraudulent activity, the Plaintiff lost thousands of dollars or more in just mere minutes.

7.      The Court should enjoin Defendants from engaging in illegal and deceptive conduct, and should award restitution, damages, penalties, and other relief as appropriate.

**PARTIES, JURISDICTION, AND VENUE**

8.      Plaintiff, S.M. ("Plaintiff"), is a natural person who resides in Gates Mills, Ohio and has resided at this location for all relevant times herein.

9.      Defendant, Athena Bitcoin, Inc. ("Athena") is a Delaware corporation with its principal place of business in Illinois.

10.     Athena is a cryptocurrency services company famous for its network of Bitcoin ATMs ("ATM") which allow users to buy and sell Bitcoin with and for cash. Athena has deployed ATMs in over 30 states and across Latin America.

11.     Defendant Genesis Coin, Inc. ("Genesis"), is a Delaware corporation that is not registered to do business in the State of Ohio. It has a principal place of business at 1541 Sunset Drive, Suite 202, Coral Gables, Florida 33143.

12.     Defendant Heights Tobacco, Inc. d/b/a Discount Tobacco & Beverage ("Discount Tobacco") is a domestic corporation with its principal place of business located at 744 Richmond Road, Richmond Heights, OH 44143.

13.     Defendant Heights Mechanical, Inc. is a domestic corporation with its principal place of business located at 2785 Mayfield Road, Cleveland Heights, OH 44106.

14.     Defendants conduct substantial business in and directed towards Ohio, including but not limited to: (i) purposefully placing, operating, maintaining, and deriving substantial revenues from 145 separate Athena Bitcoin ATMs in the State, including the Athena Bitcoin ATMs at issue in this case; (ii) advertising its Athena Bitcoin ATMs to residents of the Ohio; and (iii) conducting business with and deriving revenue from residents of Ohio who use its Athena Bitcoin ATMs, including Plaintiff.

15.     Venue lies in this Court pursuant to Ohio Civ. R. 3(C)(3) as Cuyahoga County is the county in which the Defendant conducted activity that gave rise to the claim for relief.

## FACTUAL ALLEGATIONS

### Athena Bitcoin

16.     Athena was founded on September 18, 2015, as a Delaware corporation with a principal place of business at 211 W. Wacker St., Suite 900B, Chicago, Illinois 60606. Its first ATM was located in St. Louis, Missouri.

17.     As of February 10, 2024, Athena operates nearly 3,000 Bitcoin ATMs in the US, El Salvador, Colombia, Argentina and Mexico.[4]

18.     Athena's ATMs are free standing kiosks that allow customers to exchange their physical currency for crypto assets. Customers can buy and sell Bitcoin using Athena Bitcoin ATMs - either spending or receiving physical currency (cash).

19.     Athena's ATMs are located in various strategic locations and hold themselves out, like traditional automatic teller machines, for the public to use.

20.     Athena purchased its ATM kiosks from Genesis Coin, Inc. ("Genesis").

21.     Each of Athena's ATMs is connected to the Internet and employs Entropy Software (the "Entropy") from Genesis to manage and administer the ATMs.

22.     Entropy controls the client-facing and back-office functions of Athena's ATMs.

23.     The client-facing functions of Entropy are the controls for the ATMs themselves; they permit a client to log into their wallet, deposit cash, and convert that cash to Bitcoin stored in their wallet.

24.     The back-office functions of Entropy allow Athena to monitor its network of ATMs, ensure that transactions are being resolved, control and disable individual ATMs if there is a safety or security concern, and collect the data required as a Money Services Business.

25.     In May 2024, Athena began to deploy an alternative software, Athena's Exodus Software ("Exodus"), onto its network of ATMs.

26.     By June 1, 2024, Athena had replaced the Entropy Software with Exodus on approximately 500 of its ATMs in the United States.

---

[4] https://athenabitcoin.com/the-company/ (last visited Aug. 27, 2024)

27.     To use one of Athena's ATMs, a user would approach the ATM and select one of two preset range of Bitcoin to purchase; thereafter a user has their identity verified via a one-time PIN code sent to their cell phone; from there the customer would enter their cash into the Athena ATM and identify the address of their Bitcoin wallet where they want their Bitcoin deposited.

**<u>Bitcoin Defendants are expressly aware that Bitcoin ATMs are commonly used to perpetuate the bitcoin scams, fraud, money laundering, and to pay for illegal goods and services.</u>**

28.     The Bitcoin Defendants are engaged in the business of placing and remotely operating cryptocurrency ATMs through which they sell fractional shares of the cryptocurrency Bitcoin. As of February 10, 2024, Athena operates nearly 3,000 bitcoin ATMs in the US, El Salvador, Colombia, Argentina and Mexico.[5]

29.     The Bitcoin Defendants are expressly aware that Athena ATMs are exploited by criminals to facilitate illegal activity such as fraud, money laundering, gambling, tax evasion, and scams.

30.     On its website, Athena published a blog titled "Avoid these Bitcoin Scams." In this blog, Athena expressly recognized that, "[s]cammers are looking to say and do anything to convince you of an urgent need to pay through Bitcoin, and they will often "helpfully" point out nearby ATMs where you can follow their commands."[6]

31.     Athena further recognized in the same publication that it "[...] receives numerous reports of fraud per month, so we want to share much of what we've learned to look out for when it comes to Bitcoin, digital currency, and physical cash kiosks."[7]

---

[5] https://athenabitcoin.com/the-company/ (last visited Aug. 27, 2024).
[6] https://athenabitcoin.com/avoid-these-bitcoin-scams/ (last visited Aug. 27, 2024).
[7] *Id.*

32.     By recognizing the prevalence and severity of financial scams involving cryptocurrency and its ATMs, and by holding itself out to the public and its customers that it "ensures safe and secure banking [...]", the Bitcoin Defendants assumed a duty to ensure that their efforts to prevent, intercept, and mitigate financial abuse through its ATMs were reasonable.

33.     However, the Bitcoin Defendants are expressly aware that it does nothing to ensure safe and secure banking, and that its ATMs continue to be used in cryptocurrency scams, money laundering, and transactions involving illegal goods and services.

34.     Further illustrating this point, Athena received a complaint directly from a consumer in May 2024, that they had been victimized by a scam utilizing an Athena Bitcoin ATM[8]:

> May 8, 2024 - On 04/15/2024, I was contacted by someone who had access to all my personal identifying information. These individuals also had information on my live online banking transactions and reported I was being scammed by *****. I was advised to pull my money out the bank and deposit it in an ****** Bitcoin machine at the location in this gas station. After depositing the money it was obvious it was a scam as I could no longer access it and the numbers listed wouldnt give me any information on how to access the money. Spoke to the owner and they refused to give information on who put the *** there to myself and Police. They had conflicting stories and the police confiscated the *** in belief my $20,000 was still there. The owner did report he received 20% commission of whatever the machine makes. The concerns are they know this is a scam and has it in the stores with no trail of owns it. They reports its serviced sporadically or when a deposit is made which is a red flag. The owners involvement is being investigated and its believed Marathon should be held responsible for their involvement. They should be pushed to safe guard their customers against fraud and not allow it in their store. Looking for $20,000 to be giving back to me. The number provided by the atm machine is ************** and theyre not providing any information.

---

[8]https://www.bbb.org/us/il/chicago/profile/banking-services/athena-bitcoin-inc-0654-1000100837 (last visited Aug. 27, 2024).

35.     Based on the foregoing, the Bitcoin Defendants are expressly aware that the measures it claims to have taken to ensure the safety and security of its customers are ineffective, and that its ATMs continue to be used by scammers to defraud victims.

### The Bitcoin Scam

36.     Plaintiff, S.M., is a recently widowed, eighty-year-old woman who lives alone in Gates Mills, Ohio.

37.     Plaintiff was the target and victim of a Bitcoin ATM Scam.

38.     On Wednesday, July 10, 2024, Plaintiff received a Facebook friend request from someone who was already her Facebook friend which prompted her to question the individual as to the duplicate request. The individual advised Plaintiff that the request was invalid and provided Plaintiff with a telephone number to report the error.  When Plaintiff called the number, the recipient advised Plaintiff that her phone was hacked and that her bank accounts were being monitored. To address the issue, the recipient transferred Plaintiff to Adam Parker ("Mr. Parker"), an alleged representative of the Citizens Bank Fraud Department. Mr. Parker advised Plaintiff that pornography had been purchased using her account which is a federal offense. Mr. Parker further advised that the pornography purchase was a federal offense for which she could receive jail time. Mr. Parker then transferred her to Andy Ferguson ("Mr. Ferguson"), an alleged representative of the Federal Trade Commission.

39.      Mr. Ferguson advised Plaintiff that an unknown scammer was attempting to withdraw all of her money from her bank accounts, and to protect her money she had to withdraw it from the bank and deposit it into a Bitcoin ATM. She was then instructed to not tell the police or family.

40.     That same day, on July 10, 2024, at the instruction of Mr. Ferguson, Plaintiff deposited $6,000.00 into an Athena Bitcoin ATM located at 456 Richmond Rd., Richmond Heights, Ohio 44143.

41.     The ATM accepted the $6,000 cash in exchange for .07796712 of a bitcoin ("BTC"), at a sales rate of $76,955.52, which Athena deposited into the scammer's bitcoin wallet.

42.     The following day, on July 11, 2024, at the continued instruction of Mr. Ferguson, Plaintiff withdrew a substantial amount of money from accounts she held in various banks. Specifically, Plaintiff withdrew $24,756.18 from her Huntington Bank CDR account, $5,000.00 from her Citizens Bank checking account, and an additional $10,000.00 from her KeyBank checking account.

43.     Mr. Ferguson then instructed Plaintiff to make two separate deposits of $14,800 and $24,910 into an Athena Bitcoin ATM located at 2785 Mayfield Road, Cleveland Heights, Ohio 44118.

44.     On July 12, 2024, Plaintiff received a phone call from Mr. Ferguson who advised Plaintiff that her account continued to be hacked. In order to remedy the issue, Plaintiff was instructed to deposit another $25,000 into an Athena Bitcoin ATM.

45.     This time, Plaintiff suspected fraud and immediately filed a police report with the Gates Mills Police Department.

46.     The Defendants are capable of implementing effective and sufficient checks and procedures both at the ATMs and internally that would intervene, prevent, mitigate, or deter the use of the ATMs in scams such as the one in this case, but knowingly choose not to adopt

effective checks or balances because doing so would thwart a substantial volume of their business and the immense profit they gain from every dollar inserted into the ATM.

**Defendants derive a substantial income from use of ATMs in fraudulent scams, money laundering schemes, the sale of illegal goods and services, and other crimes, and therefore intentionally takes less-than-sufficient steps to intervene, prevent, or mitigate against these transactions.**

47.     Notwithstanding their awareness that Athena ATMs are commonly used to facilitate elder financial scams through Bitcoin scams, in addition to money laundering, the sale of illegal goods and services, and other crimes, the Defendants make no meaningful efforts to intervene in such scams, because they derive a substantial profit from the ATMs by selling BTC through the ATMs at an exorbitant markup from BTC's actual market value.

48.     Upon information and belief, on July 10, 2024, the market value of 1 BTC was approximately $57,742.50[9], but Athena sold the subject BTC at a 33% markup, at $76,955.52 per BTC, resulting in a profit of approximately $4,800 for Athena as a result of the Plaintiff's first transaction.

49.     The Defendants are fully aware that they can charge such exorbitant markups, and do charge such exorbitant markups, because: (i) a substantial portion of their market base uses the ATMs in scams and/or to launder and convert illicit funds, including funds derived from scams such as the one in this case, into BTC that is untraceable and accepted in a variety of online marketplaces globally; and (ii) a substantial portion of its market base includes unsophisticated investors who know no better than to purchase BTC at a usurious rate not dissimilar to the rates charged by predatory payday lenders.

50.     The Defendants are capable of implementing effective and sufficient checks and procedures both at the ATMs and internally that would intervene, prevent, mitigate, or deter the

---

[9] https://www.statista.com/statistics/326707/bitcoin-price-index/ (last visited Aug. 27, 2024).

use of the ATMs in scams such as the one in this case, but knowingly choose not to adopt effective checks or balances because doing so would thwart a substantial volume of their business and the immense profit they gain from every dollar inserted into the ATM.

## CLASS ACTION ALLEGATIONS

51.     Plaintiff brings this action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of herself and the following Class:

> All persons over the age of 60 residing in the State of Ohio who were victims of a financial scam involving an Athena Bitcoin ATM.

52.     Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to its departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as its immediate family members.

53.     Plaintiff reserves the right to amend the above definitions or to propose subclasses in subsequent pleadings and motions for class certification.

54.     This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation, and membership in the proposed classes is easily ascertainable.

55.     <u>Numerosity</u>: A class action is the only available method for the fair and efficient adjudication of this controversy, as the members of the Class (which Plaintiff is informed and believes, and on that basis, alleges that the total number of persons is in the hundreds and can be

determined by analysis of Defendant's records) are so numerous that joinder of all members is impractical, if not impossible.

56.  <u>Commonality</u>: Plaintiff and Class Members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

   a. Whether Defendants had a legal duty to Plaintiff and the Class to exercise due care to intervene, prevent, mitigate, and/or deter the use of Athena Bitcoin ATMs in financial scams;

   b. Whether Defendants knew or should have known of the susceptibility of Plaintiff and Class Members in financial scams involving Athena Bitcoin ATMs;

   c. Whether Defendants' security procedures and practices to intervene, prevent, mitigate, and/or deter financial scams involving its Athena Bitcoin ATMs were reasonable in light of the industry standard;

   d. Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to the intervention, prevention, mitigation, and/or deterrence of financial scams involving its Athena Bitcoin ATMs;

   e. Whether Defendants have knowledge that its Athena Bitcoin ATMs are used by criminals to engage in transactions for illegal goods and services, including drug sales and trafficking, human trafficking, and prostitution;

   f. Whether Defendants failed to design and manufacture its Athena Bitcoin ATMs to deter the victimization of its users;

g.  Whether Defendants failed to design and manufacture its Athena Bitcoin ATMs to prevent the victimization of its users;

h.  Whether Defendants' conduct, including its failure to act, resulted in or was the proximate cause of Plaintiff's and Class Members' injuries;

i.  Whether Plaintiff and Class Members are entitled to actual and/or statutory damages and/or whether injunctive, corrective and/or declaratory relief and/or accounting is/are appropriate as a result of Defendants' wrongful conduct; and

j.  Whether Plaintiff and Class Members are entitled to restitution as a result of Defendants' wrongful conduct.

57.  <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class sustained damages arising out of and caused by Defendant's common course of conduct in violation of law, as alleged herein.

58.  <u>Adequacy of Representation</u>: Plaintiff is an adequate representative of the Class in that the Plaintiff has the same interest in the litigation of this case as the Class Members, is committed to the vigorous prosecution of this case, and has retained competent counsel who are experienced in conducting litigation of this nature.

59.  Plaintiff is not subject to any individual defenses unique from those conceivably applicable to other Class Members or the class in its entirety. Plaintiff anticipates no management difficulties in this litigation.

60.  <u>Superiority of Class Action</u>: Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member make or may make it impractical for members of the Class to seek redress individually for the wrongful conduct alleged herein. Should separate actions be

brought or be required to be brought by each individual member of the Class, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants.

61.     The prosecution of separate actions would also create a risk of inconsistent rulings, which might be dispositive of the interests of the Class Members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests adequately.

62.     This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to Class Members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class in its entirety.

63.     Defendant's policies and practices challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies and practices hinges on Defendant's conduct with respect to the Class in its entirety, not on facts or law applicable only to Plaintiff.

64.     Unless a Class-wide injunction is issued, Defendants may continue failing to properly take measures to protect vulnerable persons who fall victim to financial scams involving Defendants' ATMs, and Defendant may continue to act unlawfully as set forth in this Complaint.

65.     Further, Defendant has acted or refused to act on grounds generally applicable to the Classes and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

## COUNT ONE: NEGLIGENCE
### (Against the Bitcoin Defendants)
#### *On behalf of Plaintiff and the Class*

66.     Plaintiff alleges and incorporates herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

67.     Defendant is expressly aware of the risk of financial abuse and has made affirmations to the public and its customers that it "ensures safe and secure banking [...]". Accordingly, Defendant has assumed a duty to Plaintiff and the Class to take reasonable steps to prevent the financial exploitation of elderly adults taking part in whole or in part at its Bitcoin ATMs.

68.     As a financial services company, Defendant also owed a statutory duty to be aware of Plaintiff's and Class Members' status, age, and risk of being victimized under the "Know Your Customer" Rule under the Patriot Act and, if it did so, would have recognized that Plaintiff and Class Members were vulnerable persons.

69.     Plaintiff and Class Members, as senior citizens, are well-recognized within the cryptocurrency industry as a target for elder financial abuse, even according to Defendant's own website that displays a telephone number for the AARP's fraud watch helpline.[10]

70.     The transactions at issue in this case were atypical and suggestive of a scam, and should have triggered an alert with Defendant, because they involved an eighty-year-old woman depositing $45,710.00 in BTC at two different Athena Bitcoin ATMs, within a twenty-four hour period, into a bitcoin wallet that belonged to someone else.

71.     Defendant breached its duties to Plaintiff and the Class by negligently, recklessly, and knowingly failing to implement checks and procedures both at its ATMs and internally that

---

[10] https://athenabitcoin.com/avoid-these-bitcoin-scams/ (last visited Aug. 27, 2024).

would effectively intervene, mitigate, or deter the use of its ATMs in scams such as the one in this case.

72.     Defendant through its actions and failure to act, negligently, grossly negligently, and recklessly participated in and materially aided in the financial exploitation of Plaintiff and the Class. Without Defendant's actions and failures, such exploitation would not have occurred.

73.     Defendant's negligent, reckless, and knowing failure and refusal to implement appropriate and sufficient checks and procedures to intervene, mitigate, or deter the use of the ATMs described above in the subject scam was a direct and proximate cause of Plaintiff and Class Members being scammed out of $45,710.00, while the Defendant gained a profit as a direct result of the scam being committed.

### COUNT TWO: VIOLATION OF THE OHIO PRODUCTS LIABILITY ACT
### R.C. 2307.71, et seq.
### Public Nuisance
### (Against all Defendants)
### *On behalf of Plaintiff and the Class*

74.     Plaintiff alleges and incorporates herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

75.     Plaintiff and Class Members are "claimants" as that term is defined by R.C. 2307.71(A)(1)(a).

76.     Each of the Defendants are "suppliers" as that term is defined by R.C. 2307.71.

77.     Bitcoin ATMs are a public nuisance that interfere with public health, safety, peace, comfort, or convenience because  (i) they are known vehicles for the laundering of illicit funds, the procurement of such funds which contributes to criminal conduct in the community; (ii) they are recognized methods by which criminals engage in transactions for illegal goods and services, including drug sales and trafficking, human trafficking, and prostitution; (iii) they are

known methods for facilitating illegal gambling; and (iv) their owners prey upon the unsophistication of users and/or illegal sourcing of users funds by charging an exorbitant and usurious markup on the market price of BTC.

78.     The presence of Bitcoin ATMs have had a negative effect on a number of persons in Ohio and society at large by serving as a vehicle for Cryptocurrency ATM Scams, by permitting the unchecked laundering of illicit funds the procurement of such funds which contribute to criminal conduct in the community, by facilitating the sale of illegal goods and services within the community, and by preying upon unsophisticated users by charging an exorbitant and usurious markup on the market price of BTC.

79.     Plaintiff and Class Members have suffered a special injury distinct from the injuries suffered by the public generally, because Bitcoin ATMs, as designed, manufactured, placed, and maintained by the Defendant, facilitated and materially aided in the defrauding of Plaintiff of $45,710.00. This economic loss caused great mental distress to Plaintiff and Class Members.

80.     Defendants are liable to Plaintiff and Class Members for the damages they sustained as a direct and proximate result of the presence and operation of the Bitcoin ATMs at issue in this case.

**COUNT THREE: VIOLATION OF THE OHIO PRODUCTS LIABILITY ACT**
**R.C. 2307.71, et seq.**
**Negligent Design/Failure to Warn**
**(Against the Bitcoin Defendants)**
***On Behalf of Plaintiff and the Class***

81.     Plaintiff alleges and incorporates herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

82.    Each Bitcoin Defendant is a "manufacturer" as that term is defined by R.C. 2307.71(9).

83.    Each Bitcoin Defendant is expressly aware of the risk of financial abuse and has made affirmations to the public and its customers that it "ensures safe and secure banking [...]". Accordingly, the Bitcoin Defendants have assumed a duty to take reasonable steps to prevent the financial exploitation of elderly adults taking part in whole or in part at its Bitcoin ATMs.

84.    Each Bitcoin Depot Defendant breached its duties to Plaintiff and Class Members by negligently, recklessly, and knowingly failing to implement checks and procedures both at its ATMs and internally that would effectively intervene, mitigate, or deter the use of its ATMs in scams such as the one in this case.

85.    Specifically, the Bitcoin Defendants were negligent in the following regards:

a.  In designing and manufacturing Athena ATMs in such a manner as to facilitate victimization of users;

b.  In designing and manufacturing the Bitcoin ATMs without appropriate warnings or instructions that would have prevented the victimization of users; and

c.  In designing and manufacturing the Bitcoin ATMs without appropriate fail safes to monitor use of the machine to prevent victimization of users.

86.    The Bitcoin Defendants are capable of implementing effective and sufficient checks and procedures both at the ATMs and internally that would intervene, prevent, mitigate, or deter the use of the ATMs in scams such as the one in this case, but knowingly choose not to adopt effective checks or balances because doing so would

thwart a substantial volume of their business and the immense profit they gain from every dollar inserted into the ATM.

87.     As a direct and proximate result of the Bitcoin Defendants' placing a defective and unreasonably dangerous product into the stream of commerce, Plaintiff and Class Members have suffered damage to her property in the form of loss of title to cash assets deposited into the machines and severe mental distress.

<u>**COUNT FOUR: PREMISES LIABILITY**</u>
<u>**(Against the Store Defendants)**</u>
*On Behalf of Plaintiff*

88.     Plaintiff alleges and incorporates herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

89.     Each Store Defendant owns and maintains control over the convenience stores at which the Athena ATMs are located.

90.     Plaintiff entered each store at the implied invitation of the Store Defendants who hold their stores open to customers, and so Plaintiff is considered an invitee under the law.

91.     Because Plaintiff is considered an invitee, each Store Defendant owed Plaintiff a duty to warn Plaintiff of latent and hidden dangers of which the Store Defendants had or should have had knowledge.

92.     Each Store Defendant had actual knowledge that the Athena ATMs located on its property are commonly used to perpetuate cryptocurrency scams, including against elderly persons such as Plaintiff.

93.     It is not obvious upon viewing the Athena ATMs that they are used to perpetuate cryptocurrency scams, including scams against elderly persons such as Plaintiff.

94.     Plaintiff was in fact the victim of a cryptocurrency scam facilitated by two Athena ATMs located in each of the Store Defendants' facilities.

95.     As a direct and proximate result of the Store Defendants' failure to take reasonable steps to warn Plaintiff that the Athena ATMs are often used to perpetuate cryptocurrency scams, Plaintiff fell victim to a cryptocurrency scam at the Store Defendants' stores, and sustained damages as a result.

96.     Each Store Defendant is liable to Plaintiff for her damages proximately resulting from the Store Defendants' failing to take reasonable steps to warn Plaintiff that the Athena ATMs are often used to perpetuate cryptocurrency scams.

97.     The Store Defendants' failure to warn Plaintiff of this latent hazard at its stores was a result of intentional and purposeful acts by the Store Defendants not to implement policies and procedures to warn its customers of this hazard. The Store Defendants were not merely negligent in its failure to warn, but consciously made the decision not to warn its customers of this hazard.

## COUNT FIVE: VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT
### R.C. 1345.01, et seq.
### (Against the Store Defendants)
### *On Behalf of Plaintiff*

98.     Plaintiff alleges and incorporates herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

99.     Plaintiff is a "consumer" as that term is defined by R.C. 1345.01(D).

100.     Each of the Store Defendants are "suppliers" as that term is defined by R.C. 1345.01(C).

101.     The transactions between Plaintiff and each of the Store Defendants are "consumer transactions" because the Store Defendants provided the use of their in-store Athena ATM to Plaintiff for personal, family, or household purposes. R.C. 1345.01(A).

102.     Unconscionable acts and practices are prohibited by R.C. 1345.03. R.C. 1345.03(A) generally prohibits suppliers from committing an "unconscionable act or practice" in connection with a consumer transaction. The term "unconscionable" is not defined, but R.C. 1345.03(B) contains a list of "circumstances" that should be considered when determining whether an act or practice is unconscionable.

103.     In determining whether an act or practice is unconscionable, the following circumstances shall be taken into consideration: (1) Whether the supplier has knowingly taken advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's physical or mental infirmities, ignorance, illiteracy, or inability to understand the language of an agreement; and (2) Whether the supplier knew at the time the consumer transaction was entered into that the price was substantially in excess of the price at which similar property or services were readily obtainable in similar consumer transactions by like consumers. R.C. 1345.03(B).

104.     The Store Defendants are expressly aware that Athena ATMs are used as vehicles by scammers to defraud the elderly and vulnerable both in this State and elsewhere.

105.     Notwithstanding this fact, the Store Defendants have taken insufficient steps to prevent, intervene, or mitigate those instances in which Athena ATMs are used by scammers,

because the Store Defendants derive a substantial revenue from the use of Athena ATMs in its stores.

106.    The Store Defendants could easily implement additional or different protocols or procedures to prevent Athena ATMs from being used by scammers, such protocols which other store owners use to prevent the use of Athena ATMs in its stores in scams.

107.    Store Defendants intentionally choose not to implement these protocols or procedures because doing so would thwart continued use of the Athena ATMs by scammers, and the Store Defendants would not collect the substantial revenue they derive from their relationship with Athena.

108.    The Store Defendants' acts and practices constitute an unconscionable act or practice pursuant to ORC § 1345.03.

109.    Plaintiff suffered substantial monetary losses as a direct result of the Store Defendants intentionally and knowingly failing to take appropriate steps to prevent, intervene, or mitigate instances in which in which persons are victimized by scams perpetrated through Athena ATMs in the Store Defendants' facilities in this State and elsewhere.

110.    As a result of the Store Defendants' violation of the CSPA, Defendants are liable to the Plaintiff for actual damages, statutory damages, reasonable attorney's fees and costs as well as treble damages and non-economic damages.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiff, S.M., on behalf of herself and each member of the proposed Class, respectfully requests the following relief from Defendants, Athena Bitcoin, Inc., Genesis Coin, Inc., Heights Tobacco, Inc., and Heights Mechanical, Inc., jointly and severally:

A. That the Court declare, adjudge, and decree that this action is a proper class action and certify the proposed class and/or any other appropriate subclasses under F.R.C.P. Rule 23 (b)(1), (b)(2), and/or (b)(3), including the appointment of Plaintiff's counsel as Class Counsel;

B. For an award of damages, including actual, nominal, consequential, and punitive damages, as allowed by law in an amount to be determined;

C. For an award of non-economic damages of up to Five Thousand Dollars ($5,000.00) to Plaintiff for the allegations contained in Count Five of the Complaint;

D. For treble damages to Plaintiff in an amount to be determined for the allegations contained in Count five of the Complaint;

E. That the Court enjoin Defendants, ordering them to cease from unlawful activities;

F. For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an Order:

   a. prohibiting Defendants from engaging in the wrongful and unlawful acts described herein; and

   b. requiring Defendants to implement and maintain measures to intervene, prevent, mitigate, and/or deter financial scams involving its ATMs to protect Plaintiff and Class Members.

G. For prejudgment interest on all amounts awarded, at the prevailing legal rate;

H. For an award of all of Plaintiff's reasonable attorneys' fees and costs against the Defendants for the allegations contained in all Counts of the Complaint; and

I. For all other relief this Court deems just and proper.

Respectfully Submitted,

/s/ Marita I. Ramirez
Marita I. Ramirez (0101882)
Marc E. Dann (0039425)
Brian D. Flick (0081605)
DannLaw
15000 Madison Avenue
Lakewood, OH 44107
(216) 373-0539
(216) 373-0536 e-fax
notices@dannlaw.com

*Attorneys for Plaint₃f S.M.*

## JURY DEMAND

Plaintiff, S.M., hereby respectfully demands a trial by jury on all such claims that may be

so tried.

Respectfully Submitted,

/s/ Marita I. Ramirez
Marita I. Ramirez (0101882)
Marc E. Dann (0039425)
Brian D. Flick (0081605)
DannLaw
15000 Madison Avenue
Lakewood, OH 44107
(216) 373-0539
(216) 373-0536 e-fax
notices@dannlaw.com

*Attorneys for Plaint₃f S.M.*