# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| **S.M., on behalf of herself and all others similarly situated,** | Case No. 1:24-cv-01755 |
| Plaintiff, | Judge David A. Ruiz |
| v. | **FIRST AMENDED CLASS ACTION COMPLAINT FOR:** |
| **ATHENA BITCOIN, INC., et al.,** | 1. Negligence; |
| Defendant. | 2. Violation of the Ohio Products Liability Act, O.R.C. § 2307.71, *et seq.* (Negligent Design); |

3. Violation of the Ohio Products Liability Act, O.R.C. § 2307.71, *et seq.* (Public Nuisance);
4. Civil Theft for Receiving Stolen Property;
5. Conversion;
6. Unjust Enrichment;
7. Premises Liability; and
8. Violations of the Ohio Consumer Sales Practices Act, O.R.C. § 1345.01 *et seq.*

**DEMAND FOR JURY TRIAL**

Plaintiff, S.M. ("Plaintiff"), and for her *First Amended Class Action Complaint for Damages* against Defendants, Athena Bitcoin, Inc. ("Athena"), Heights Tobacco, Inc. d/b/a Discount Tobacco & Beverage ("Discount Tobacco") and Heights Mechanical, Inc. ("Heights Mechanical") (collectively, the "Store Defendants") hereby states as follows:

## INTRODUCTION

1.      Elder financial scams are well-known in the financial services industry.

2.      The Federal Trade Commission ("FTC") reported that in 2022 alone, elder financial scams accounted for a reported loss of $1.6 billion, an increase from the reported $1 billion lost due to elder financial scams in 2021.[1]

3.      The Consumer Financial Protection Bureau reported in February 2019 that an estimated $2.9 billion to $36.5 billion is lost every year to financial exploitation of older adults.[2] The Bureau reported that "Since 2013, financial institutions have reported to the federal government over 180,000 suspicious activities targeting older adults, involving a total of more than $6 billion. These reports indicate that financial exploitation of older adults by scammers, family members, caregivers, and others is widespread in the United States." *Id*.

4.      Many forms of elder financial scams involve transactions centered upon untraceable cryptocurrency, such as Bitcoin.

5.      The FTC reported that between January 2021 and June 2022, more than 46,000 persons reported they had been victims of cryptocurrency scams, amounting to losses of more than $1 billion, the reported median loss of which was $2,600.[3] The most common cryptocurrency the victims reported paying to scammers Bitcoin was involved in 70% of the scams. *Id*.

6.      Elder financial scams involving cryptocurrency take a number of forms. One such scam, pertinent to this case, involves a scammer impersonating the victim's bank, the government, a utility company, or relative via the telephone. The scammer convinces the victim of an artificial

---

[1] Federal Trade Commission, Fighting fraud against older adults (Oct. 18, 2023) https://consumer.ftc.gov/consumeralerts/2023/10/fighting-fraud-against-olderadults#:~:text=While%20younger%20people%20were%20still,%241%20billion%20the%20year%20before. (last visited Aug. 27, 2024).

[2] Consumer Financial Protection Bureau, Suspicious Activity Reports on Elder Financial Exploitation: Issues and Trends (Feb. 2019) https://files.consumerfinance.gov/f/documents/cfpb_suspicious-activity-reports-elder-financial-exploitation_report.pdf(consumerfinance.gov). (last visited Aug. 27, 2024).

[3] Federal Trade Commission, Reports show scammers cashing in on crypto craze (June 3, 2022) https://www.ftc.gov/news-events/data-visualizations/data-spotlight/2022/06/reports-show-scammers-cashing-crypto-craze.

problem requiring urgent action, and further convinces the victim that the only way to resolve the problem is to deposit cash into a cryptocurrency-vending Automatic Teller Machine, which converts the victim's U.S. Dollars into untraceable cryptocurrency, and to transfer the Bitcoin to a "secure" Bitcoin wallet. *Id*. The scammer then sends the user a QR code and instructs the user to hold the QR code up to the ATM camera, but the QR code is embedded with the scammer's Bitcoin wallet address, and so the Bitcoin is deposited directly into the scammer's online Bitcoin wallet. *Id*. According to the FTC, the median individual reported loss for persons in their 70s involved in cryptocurrency scams was $11,708. *Id*.

7.     Despite having knowledge that Athena Bitcoin ATMs ("BTM") are exploited by criminals to facilitate illegal activity such as fraud, money laundering, and scams, including cryptocurrency BTM scams, Defendants fail to prevent, intercept, and/or mitigate the elder financial scams involving its BTMs.

8.     By recognizing the prevalence and severity of elder financial scams involving cryptocurrency and Athena BTMs, and by holding themselves out to the public and their customers that it "ensures safe and secure banking [...]", Defendants assumed a duty to ensure that their efforts to prevent, intercept, and mitigate elder financial abuse through its BTMs were reasonable.

9.     However, Defendants make no meaningful efforts to intervene in such scams. As such, Athena BTMs continue to be used in cryptocurrency scams, money laundering, and other illegal transactions.

10.     The Defendants are capable of implementing effective and sufficient checks and procedures both at the BTMs and internally that would intervene, prevent, mitigate, or deter the use of the BTMs in scams such as the one in this case, but knowingly choose not to adopt effective

checks or balances because doing so would thwart a substantial volume of their business and the profits gained from every dollar inserted into the BTM.

6.      The results are devastating. Due to the Defendants' negligent, reckless, and knowing failure and refusal to implement appropriate and sufficient checks and procedures to prevent, intervene, mitigate, or deter the use of the BTMs in fraudulent activity, the Plaintiff lost thousands of dollars or more in just mere minutes.

7.      The Court should enjoin Defendants from engaging in illegal and deceptive conduct, and should award restitution, damages, penalties, and other relief as appropriate.

## PARTIES

8.      Plaintiff, S.M. ("Plaintiff"), is a natural person who resides in Gates Mills, Ohio and has resided at this location for all relevant times herein.

9.      Defendant, Athena Bitcoin, Inc. ("Athena")  is a Delaware corporation with its principal place of business in Illinois.

10.      Athena is a cryptocurrency services company famous for its network of Bitcoin ATMs ("BTM") which allow users to buy and sell Bitcoin with and for cash. Athena has deployed BTMs in over 30 states and across Latin America.

11.      Athena is a Money Services Business and is registered with the United States Department of the Treasury's Financial Crimes Enforcement Network ("FinCEN"), pursuant to 31 C.F.R. Ch. X, Part 1022.

12.      Defendant Heights Tobacco, Inc. d/b/a Discount Tobacco & Beverage ("Discount Tobacco") is a domestic corporation with its principal place of business located at 744 Richmond Road, Richmond Heights, OH 44143.

13.     Defendant Heights Mechanical, Inc. is a domestic corporation with its principal place of business located at 2785 Mayfield Road, Cleveland Heights, OH 44106.

14.     Defendants conduct substantial business in and directed towards Ohio, including but not limited to: (i) purposefully placing, operating, maintaining, and deriving substantial revenues from 145 separate Athena BTMs in the State, including the Athena BTMs  at issue in this case; (ii) advertising its Athena BTMs to residents of the Ohio; and (iii) conducting business with and deriving revenue from residents of Ohio who use its Athena BTMs, including Plaintiff.

## JURISDICTION AND VENUE

15.     This Court has original subject matter jurisdiction under 28 U.S.C. § 1332(d), because this case is brought as a class action, at least one class member is diverse from one Defendant, there are 100 or more Class members, and the aggregate amount in controversy exceeds $5 million.

16.     This Court alternatively has jurisdiction pursuant to 28 U.S.C. § 1331, as one of the causes of action arises out of Defendant's violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961-1968 ("RICO").

17.     This Court has supplemental jurisdiction to hear any state law claims that are plead herein or that may subsequently arise pursuant to 28 U.S.C. § 1367.

18.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b), as S.M. resides within this District, each of the Defendants do business within this District, and the conduct giving rise to the causes of action in this Complaint, *infra*, occurred primarily within this District.

## FACTUAL ALLEGATIONS

### Bitcoin

19.     Bitcoin (BTC) is a cryptocurrency (a virtual currency) designed to act as money and a form of payment outside the control of any one person, group, or entity.[4]

20.     Instead of being transferred through banks, brokers, clearing houses, custodians, or payment processors cryptocurrency is transferred directly to the recipient online and transactions are recorded on a blockchain or public ledger. Instead of being held at a bank, cryptocurrency is stored in one's digital wallet, which is an online vault for holding public and private keys to exercise control over crypto assets.

21.     From a user perspective, BTC is nothing more than a mobile app or computer program that provides a personal BTC wallet and allows a user to send and receive BTCs with them.

22.     A 'wallet' when used in the context of Bitcoin is a place to store public and private keys for controlling cryptocurrency. Wallets are typically software, hardware, or paper-based. When used in the context of Bitcoin, a 'public key' or 'private key' each have a public address and a corresponding public key and private key that are cryptographically generated. A private key allows the recipient to access any funds belonging to the address, similar to a bank account password. A public key helps validate transactions that are broadcast to and from the address. Addresses are shortened versions of public keys, which are derived from private keys.

23.     As a form of digital currency, BTC isn't hard to understand. For example, if you own a BTC, you can use your cryptocurrency wallet to send smaller portions of that bitcoin as payment for goods or services. By contrast, the way Bitcoin actually works is very complex.

---

[4] https://bitcoin.org/en/faq#general (last visited Oct. 23, 2024)

24.     Behind the scenes, the Bitcoin network is sharing a public ledger called the "block chain". This ledger contains every transaction ever processed, allowing a user's computer to verify the validity of each transaction. The authenticity of each transaction is protected by digital signatures corresponding to the sending addresses, allowing all users to have full control over sending BTCs from their own Bitcoin addresses.

25.     Decentralized currencies, such as Bitcoin, and the services that have popped up to support them have created a financial industry that is less regulated than is generally considered necessary to protect consumers and users. As of 2024, there are regulated exchanges and cryptocurrency service providers, and laws in many countries require crypto service providers to be registered and monitored.[5]

26.     However, because cryptocurrency has only been in use since 2009, regulations and precedents are still being developed. *Id*.

### Athena Bitcoin

27.     Athena was founded on September 18, 2015, as a Delaware corporation with a principal place of business at 211 W. Wacker St., Suite 900B, Chicago, Illinois 60606. Its first BTM was located in St. Louis, Missouri.

28.     Athena's primary business activity is the purchase and sale of Bitcoin through Athena BTMs which are located in various strategic locations and hold themselves out, like traditional automatic teller machines, for the public to use.

29.     As of February 10, 2024, Athena operates nearly 3,000 BTMs in the US, El Salvador, Colombia, Argentina and Mexico, including 145 BTMs in the state of Ohio.[6]

---

[5] https://www.investopedia.com/articles/forex/042015/why-governments-are-afraid-bitcoin.asp (last visited Oct. 23, 2024)
[6] https://athenabitcoin.com/the-company/ (last visited Aug. 27, 2024)

30.     Athena's BTMs are free standing kiosks that allow customers to exchange their physical currency for crypto assets. Customers can buy and sell Bitcoin using Athena BTMs - either spending or receiving physical currency (cash).

31.     Customers can purchase as little as $1 of BTC, but typically choose between $100 and $1,000 per transaction[7]. Athena charges a fee per BTC equal to the prevailing price at U.S. crypto-based exchanges plus a markup. *Id*. Athena's revenue associated with BTM transactions are recognized when the crypto asset is delivered to the customer. *Id*.

32.     Each of Athena's BTMs is connected to the Internet and employs its own developed software, Exodus, to manage and administer the BTMs.

33.     Exodus controls the client-facing and back-office functions of Athena's BTMs.

34.     The client-facing functions of Exodus are the controls for the BTMs themselves; they permit a client to log into their wallet, deposit cash, and convert that cash to BTC stored in their wallet.

35.     The back-office functions of Exodus allow Athena to monitor its network of BTMs , ensure that transactions are being resolved, control and disable individual ATMs if there is a safety or security concern, and collect the data required as a Money Services Business.

36.     To use one of Athena's BTMs, a user would approach the BTM and select one of two preset range of Bitcoin to purchase; thereafter a user has their identity verified via a one-time pin code sent to their cell phone; from there the customer would enter their cash into the Athena BTM and identify the address of their Bitcoin wallet where they want their Bitcoin deposited.

37.     Athena's BTMs each hold out a unilateral contract whereby any member of the public can accept Athena's offer to sell Bitcoin by depositing cash into one of its BTMs.

---

[7] https://www.sec.gov/Archives/edgar/data/1095146/000168316824000275/athena_s1a5.htm#s1_011
(last visited Oct. 24, 2024)

**Athena is expressly aware that BTMs are commonly used to perpetuate the bitcoin scams, fraud, money laundering, and to pay for illegal goods and services.**

38.     Athena is engaged in the business of placing and remotely operating cryptocurrency BTMs through which they sell fractional shares of the cryptocurrency Bitcoin. As of February 10, 2024, Athena operates nearly 3,000 bitcoin ATMs in the US, El Salvador, Colombia, Argentina and Mexico, including 145 BTMs in the state of Ohio.[8]

39.     Athena is expressly aware that Athena BTMs are exploited by criminals to facilitate illegal activity such as fraud, money laundering, gambling, tax evasion, and scams.

40.     On its website, Athena published a blog titled "Avoid these Bitcoin Scams." In this blog, Athena expressly recognized that, "[s]cammers are looking to say and do anything to convince you of an urgent need to pay through Bitcoin, and they will often "helpfully" point out nearby ATMs where you can follow their commands."[9]

41.     Athena further recognized in the same publication that it "[...] receives numerous reports of fraud per month, so we want to share much of what we've learned to look out for when it comes to Bitcoin, digital currency, and physical cash kiosks."[10]

42.     By recognizing the prevalence and severity of financial scams involving cryptocurrency and its BTMs, and by holding itself out to the public and its customers that it "ensures safe and secure banking [...]", Athena assumed a duty to ensure that its efforts to prevent, intercept, and mitigate financial abuse through its BTMs were reasonable.

43.     Further illustrating this point, Athena received a complaint directly from a consumer in May 2024,  that they had been victimized by a scam utilizing an Athena BTM[11]:

---

[8] https://athenabitcoin.com/the-company/ (last visited Aug. 27, 2024).
[9] https://athenabitcoin.com/avoid-these-bitcoin-scams/ (last visited Aug. 27, 2024).
[10] *Id.*
[11] https://www.bbb.org/us/il/chicago/profile/banking-services/athena-bitcoin-inc-0654-1000100837 (last visited Aug. 27, 2024).

May 8, 2024 - On 04/15/2024, I was contacted by someone who had access to all my personal identifying information. These individuals also had information on my live online banking transactions and reported I was being scammed by *****. I was advised to pull my money out the bank and deposit it in an ****** Bitcoin machine at the location in this gas station. After depositing the money it was obvious it was a scam as I could no longer access it and the numbers listed wouldnt give me any information on how to access the money. Spoke to the owner and they refused to give information on who put the *** there to myself and Police. They had conflicting stories and the police confiscated the *** in belief my $20,000 was still there. The owner did report he received 20% commission of whatever the machine makes. The concerns are they know this is a scam and has it in the stores with no trail of owns it. They reports its serviced sporadically or when a deposit is made which is a red flag. The owners involvement is being investigated and its believed Marathon should be held responsible for their involvement. They should be pushed to safe guard their customers against fraud and not allow it in their store. Looking for $20,000 to be giving back to me. The number provided by the atm machine is ************** and theyre not providing any information.

44.     Athena receives complaints directly from consumers through the Better Business Bureau[12] and the Consumer Financial Protection Bureau (CFPB) that its BTM users are being victimized by a scam utilizing Athena BTMs. In fact, as recently as September 11, 2024, the Senate Committee on the Judiciary issued a letter to Athena to "take immediate action to address troubling reports that your Bitcoin ATMs (BTMs) are contributing to widespread financial fraud against elderly Americans."[13]

45.     The FTC reported that between January 2021 and June 2022, more than 46,000 persons reported they had been victims of cryptocurrency scams, amounting to losses of more than $1 billion, the reported median loss of which was $2,600.[14]

---

[12] https://www.bbb.org/us/il/chicago/profile/banking-services/athena-bitcoin-inc-0654-1000100837 (last visited Aug. 27, 2024).
[13] chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://www.judiciary.senate.gov/imo/media/doc/2024.9.11_Letter%20re%20Bitcoin%20ATM%20Fraud_combined.pdf (last visited Oct. 24, 2024)
[14] Federal Trade Commission, Reports show scammers cashing in on crypto craze (June 3, 2022) https://www.ftc.gov/news-events/data-visualizations/data-spotlight/2022/06/reports-show-scammers-cashing-crypto-craze.

46.     In 2023, the Federal Bureau of Investigation (FBI) received more than 5,500 complaints regarding crypto kiosks being used for fraudulent activity with losses over $189 million.  Americans over 60 years old filed the vast majority of complaints and suffered the vast majority of losses.  And this data from the FTC and FBI likely under-report the true extent of the scams and fraud associated with BTMs.

47.     Based on the foregoing, Athena is expressly aware that the measures it claims to have taken to ensure the safety and security of its customers are ineffective, and that its BTMs continue to be used by scammers to defraud victims.

**Defendants derive a substantial income from use of BTMs in fraudulent scams, money laundering schemes, the sale of illegal goods and services, and other crimes, and therefore intentionally takes less-than-sufficient steps to intervene, prevent, or mitigate against these transactions.**

48.     Notwithstanding their awareness that Athena BTMs are commonly used to facilitate elder financial scams through Bitcoin scams, in addition to money laundering, the sale of illegal goods and services, and other crimes, the Defendants make no meaningful efforts to intervene in such scams, because they derive a substantial profit from the BTMs by selling BTC through the BTMs at an exorbitant markup from BTC's actual market value.

49.     Upon information and belief, on July 10, 2024, the market value of 1 BTC was approximately $57,742.50[15], but Athena sold the subject BTC at a 33% markup, at $76,955.52 per BTC, resulting in a profit of approximately $4,800 for Athena as a result of the Plaintiff's first transaction.

50.     The Defendants are fully aware that they can charge such exorbitant markups, and do charge such exorbitant markups, because: (i) a substantial portion of their market base uses the BTMs in scams and/or to launder and convert illicit funds, including funds derived from

---

[15] https://www.statista.com/statistics/326707/bitcoin-price-index/ (last visited Aug. 27, 2024).

scams such as the one in this case, into BTC that is untraceable and accepted in a variety of online marketplaces globally; and (ii) a substantial portion of its market base includes unsophisticated investors who know no better than to purchase BTC at a usurious rate not dissimilar to the rates charged by predatory payday lenders.

51.     The Defendants are capable of implementing effective and sufficient checks and procedures both at the BTMs and internally that would intervene, prevent, mitigate, or deter the use of the BTMs in scams such as the one in this case, but knowingly choose not to adopt effective checks or balances because doing so would thwart a substantial volume of their business and the immense profit they gain from every dollar inserted into the BTM.

**The Bitcoin Scam**

52.     Plaintiff, S.M., is a recently widowed, eighty-year-old woman who lives alone in Gates Mills, Ohio.

53.     Plaintiff was the target and victim of a BTM Scam.

54.     On Wednesday, July 10, 2024, Plaintiff received a Facebook friend request from someone who was already her Facebook friend which prompted her to question the individual as to the duplicate request. The individual advised Plaintiff that the request was invalid and provided Plaintiff with a telephone number to report the error. When Plaintiff called the number, the recipient advised Plaintiff that her phone was hacked and that her bank accounts were being monitored. To address the issue, the recipient transferred Plaintiff to Adam Parker ("Mr. Parker"), an alleged representative of the Citizens Bank Fraud Department. Mr. Parker advised Plaintiff that pornography had been purchased using her account which is a federal offense. Mr. Parker further advised that the pornography purchase was a federal offense for which she could

receive jail time. Mr. Parker then transferred her to Andy Ferguson ("Mr. Ferguson"), an alleged representative of the Federal Trade Commission.

55.     Mr. Ferguson advised Plaintiff that an unknown scammer was attempting to withdraw all of her money from her bank accounts, and to protect her money she had to withdraw it from the bank and deposit it into a BTM. She was then instructed to not tell the police or family.

56.     That same day, on July 10, 2024, at the instruction of Mr. Ferguson, Plaintiff deposited $6,000.00 into an Athena BTM located at 456 Richmond Rd., Richmond Heights, Ohio 44143.

57.     The BTM accepted the $6,000 cash in exchange for .07796712 of a bitcoin ("BTC"), at a sales rate of $76,955.52 ($22,198.52 more than closing price for Bitcoin on that day)[16] which Athena deposited into the scammer's bitcoin wallet.

58.     The following day, on July 11, 2024, at the continued instruction of Mr. Ferguson, Plaintiff withdrew a substantial amount of money from accounts she held in various banks. Specifically, Plaintiff withdrew $24,756.18 from her Huntington Bank CDR account, $5,000.00 from her Citizens Bank checking account,  and an additional $10,000.00 from her KeyBank checking account.

59.     Mr. Ferguson then instructed Plaintiff to make two separate deposits of $14,800 and $24,910 into an Athena BTM located at 2785 Mayfield Road, Cleveland Heights, Ohio 44118.

---

[16] https://www.statmuse.com/money/ask/bitcoin-price-july-10th-2024 last checked October 25,2024 showing the closing price of bit coin on the open market at $57,757.78

60.     On July 12, 2024, Plaintiff received a phone call from Mr. Ferguson who advised Plaintiff that her account continued to be hacked. In order to remedy the issue, Plaintiff was instructed to deposit another $25,000 into an Athena BTM.

61.     This time, Plaintiff suspected fraud and immediately filed a police report with the Gates Mills Police Department.

62.     The Defendants are capable of implementing effective and sufficient checks and procedures both at the BTMs and internally that would intervene, prevent, mitigate, or deter the use of the BTMs in scams such as the one in this case, but knowingly choose not to adopt effective checks or balances because doing so would thwart a substantial volume of their business and the immense profit they gain from every dollar inserted into the BTM.

63.     Despite Plaintiff's request to Athena for a refund of each fraudulent transaction facilitated through Athena's BTMs, Athena has refused to comply and no refund has been issued.

## CLASS ACTION ALLEGATIONS

64.     Plaintiff brings this action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of herself and the following Class:

> All persons over the age of 60 residing in the State of Ohio who were victims of a financial scam involving an Athena BTM.

65.     Excluded from the Class are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; any and all federal, state or local governments, including but not limited to its departments, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as its immediate family members.

66.     Plaintiff reserves the right to amend the above definitions or to propose subclasses in subsequent pleadings and motions for class certification.

67.     This action has been brought and may properly be maintained as a class action under Federal Rule of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation, and membership in the proposed classes is easily ascertainable.

68.     Numerosity: A class action is the only available method for the fair and efficient adjudication of this controversy, as the members of the Class (which Plaintiff is informed and believes, and on that basis, alleges that the total number of persons is in the hundreds and can be determined by analysis of Defendant's records) are so numerous that joinder of all members is impractical, if not impossible.

69.     Commonality: Plaintiff and Class Members share a community of interests in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

a.  Whether Defendants had a legal duty to Plaintiff and the Class to exercise due care to intervene, prevent, mitigate, and/or deter the use of Athena BTMs in financial scams;

b.  Whether Defendants knew or should have known of the susceptibility of Plaintiff and Class Members in financial scams involving Athena BTMs;

c.  Whether Defendants' security procedures and practices to intervene, prevent, mitigate, and/or deter financial scams involving its Athena BTMs were reasonable in light of the industry standard;

d. Whether Defendant failed to comply with its own policies and applicable laws, regulations, and industry standards relating to the intervention, prevention, mitigation, and/or deterrence of financial scams involving its Athena BTMs;

e. Whether Defendants have knowledge that its Athena BTMs are used by criminals to engage in transactions for illegal goods and services, including drug sales and trafficking, human trafficking, and prostitution;

f. Whether Defendants failed to design and manufacture its Athena BTMs to deter the victimization of its users;

g. Whether Defendants failed to design and manufacture its Athena BTMs to prevent the victimization of its users;

h. Whether Defendants' conduct, including its failure to act, resulted in or was the proximate cause of Plaintiff's and Class Members' injuries;

i. Whether Plaintiff and Class Members are entitled to actual and/or statutory damages and/or whether injunctive, corrective and/or declaratory relief and/or accounting is/are appropriate as a result of Defendants' wrongful conduct; and

j. Whether Plaintiff and Class Members are entitled to restitution as a result of Defendants' wrongful conduct.

70. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the Class. Plaintiff and all members of the Class sustained damages arising out of and caused by Defendant's common course of conduct in violation of law, as alleged herein.

71. <u>Adequacy of Representation</u>: Plaintiff is an adequate representative of the Class in that the Plaintiff has the same interest in the litigation of this case as the Class Members, is

committed to the vigorous prosecution of this case, and has retained competent counsel who are experienced in conducting litigation of this nature.

72.     Plaintiff is not subject to any individual defenses unique from those conceivably applicable to other Class Members or the class in its entirety. Plaintiff anticipates no management difficulties in this litigation.

73.     <u>Superiority of Class Action</u>: Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member make or may make it impractical for members of the Class to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought by each individual member of the Class, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants.

74.     The prosecution of separate actions would also create a risk of inconsistent rulings, which might be dispositive of the interests of the Class Members who are not parties to the adjudications and/or may substantially impede their ability to protect their interests adequately.

75.     This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to Class Members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class in its entirety.

76.     Defendant's policies and practices challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies and practices hinges on Defendant's conduct with respect to the Class in its entirety, not on facts or law applicable only to Plaintiff.

77. Unless a Class-wide injunction is issued, Defendants may continue failing to properly take measures to protect vulnerable persons who fall victim to financial scams involving Defendants' ATMs, and Defendant may continue to act unlawfully as set forth in this Complaint.

78. Further, Defendant has acted or refused to act on grounds generally applicable to the Classes and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

## COUNT ONE: NEGLIGENCE
### (Against Athena)
### *On behalf of Plaintiff and the Class*

79. Plaintiff alleges and incorporates herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

80. Defendant is expressly aware of the risk of financial abuse and has made affirmations to the public and its customers that it "ensures safe and secure banking [...]". Accordingly, Defendant has assumed a duty to Plaintiff and the Class to take reasonable steps to prevent the financial exploitation of elderly adults taking part in whole or in part at its Bitcoin ATMs.

81. As a financial services company, Defendant also owed a statutory duty to be aware of Plaintiff's and Class Members' status, age, and risk of being victimized under the "Know Your Customer" Rule under the Patriot Act and, if it did so, would have recognized that Plaintiff and Class Members were vulnerable persons.

82. Plaintiff and Class Members, as senior citizens, are well-recognized within the cryptocurrency industry as a target for elder financial abuse, even according to Defendant's own website that displays a telephone number for the AARP's fraud watch helpline.[17]

83. The transactions at issue in this case were atypical and suggestive of a scam, and should have triggered an alert with Defendant, because they involved an eighty-year-old woman depositing $45,710.00 in BTC at two different Athena Bitcoin ATMs, within a twenty-four hour period, into a bitcoin wallet that belonged to someone else.

84. Defendant breached its duties to Plaintiff and the Class by negligently, recklessly, and knowingly failing to implement checks and procedures both at its ATMs and internally that would effectively intervene, mitigate, or deter the use of its ATMs in scams such as the one in this case.

85. Defendant through its actions and failure to act, negligently, grossly negligently, and recklessly participated in and materially aided in the financial exploitation of Plaintiff and the Class. Without Defendant's actions and failures, such exploitation would not have occurred.

86. Defendant's negligent, reckless, and knowing failure and refusal to implement appropriate and sufficient checks and procedures to intervene, mitigate, or deter the use of the ATMs described above in the subject scam was a direct and proximate cause of Plaintiff and Class Members being scammed out of $45,710.00, while the Defendant gained a profit as a direct result of the scam being committed.

## COUNT TWO: VIOLATION OF THE OHIO PRODUCTS LIABILITY ACT
### R.C. 2307.71, et seq.
### Negligent Design
### (Against Athena)
### *On Behalf of Plaintiff and the Class*

---

[17] https://athenabitcoin.com/avoid-these-bitcoin-scams/ (last visited Aug. 27, 2024).

87.     Plaintiff alleges and incorporates herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

88.     Athena is a "manufacturer" as that term is defined by R.C. 2307.71(9).

89.     Athena is expressly aware of the risk of financial abuse and has made affirmations to the public and its customers that it "ensures safe and secure banking [...]". Accordingly, the Bitcoin Defendants have assumed a duty to take reasonable steps to prevent the financial exploitation of elderly adults taking part in whole or in part at its BTMs.

90.     Athena breached its duties to Plaintiff and Class Members by negligently, recklessly, and knowingly failing to implement checks and procedures both at its BTMs and internally that would effectively intervene, mitigate, or deter the use of its BTMs in scams such as the one in this case.

91.     Specifically, the Athena was negligent in the following regards:

   a. In designing and manufacturing BTMs in such a manner as to facilitate victimization of users; and

   b. In designing and manufacturing the BTMs without appropriate fail safes to monitor use of the machine to prevent victimization of users.

92.     Athena is capable of implementing effective and sufficient checks and procedures both at the BTMs and internally that would intervene, prevent, mitigate, or deter the use of the BTMs in scams such as the one in this case, but knowingly choose not to adopt effective checks or balances because doing so would thwart a substantial volume of their business and the immense profit they gain from every dollar inserted into the BTM.

93.     As a direct and proximate result of Athena's placing a defective and unreasonably dangerous product into the stream of commerce, Plaintiff and Class Members have suffered

damage to her property in the form of loss of title to cash assets deposited into the machines and severe mental distress.

### COUNT THREE: VIOLATION OF THE OHIO PRODUCTS LIABILITY ACT
### R.C. 2307.71, et seq.
### Public Nuisance
### (Against all Defendants)
#### *On behalf of Plaintiff and the Class*

94.     Plaintiff alleges and incorporates herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

95.     Plaintiff and Class Members are "claimants" as that term is defined by R.C. 2307.71(A)(1)(a).

96.     Each of the Defendants are "suppliers" as that term is defined by R.C. 2307.71.

97.     Athena BTMs are a public nuisance that interfere with public health, safety, peace, comfort, or convenience because  (i) they are known vehicles for the laundering of illicit funds, the procurement of such funds which contributes to criminal conduct in the community; (ii) they are recognized methods by which criminals engage in transactions for illegal goods and services, including drug sales and trafficking, human trafficking, and prostitution; (iii) they are known methods for facilitating illegal gambling; and (iv) their owners prey upon the unsophistication of users and/or illegal sourcing of users funds by charging an exorbitant and usurious markup on the market price of BTC.

98.     The presence of Athena BTMs have had a negative effect on a number of persons in Ohio and society at large by serving as a vehicle for Cryptocurrency BTM Scams, by permitting the unchecked laundering of illicit funds the procurement of such funds which contribute to criminal conduct in the community, by facilitating the sale of illegal goods and

services within the community, and by preying upon unsophisticated users by charging an exorbitant and usurious markup on the market price of BTC.

99.     Plaintiff and Class Members have suffered a special injury distinct from the injuries suffered by the public generally, because Athena BTMs, as designed, manufactured, placed, and maintained by the Defendant, facilitated and materially aided in the defrauding of Plaintiff of $45,710.00. This economic loss caused great mental distress to Plaintiff and Class Members.

100.     Defendants are liable to Plaintiff and Class Members for the damages they sustained as a direct and proximate result of the presence and operation of the Athena BTMs at issue in this case.

### COUNT FOUR: CIVIL THEFT FOR RECEIVING STOLEN PROPERTY
### (Against All Defendants)
### *On behalf of Plaintiff and the Class*

101.     Plaintiff alleges and incorporates herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

102.     Plaintiff and Class Members were the rightful owner of the funds they withdrew from their bank accounts, which was stolen through fraud and converted into Bitcoin by third-party scammers using Athena's BTM. The theft was perpetrated by a scheme in which Plaintiff and Class Members were wrongfully induced to deposit their funds into the BTM, believing it would protect their assets.

103.     Defendants directly benefited from the theft by receiving a profit of $17,369.80 (a 38% markup) from the transactions in which Plaintiff's and Class Members' stolen funds were converted into Bitcoin. Despite having knowledge that Athena BTMs were being used in scams, Defendants took no action to prevent the theft or return Plaintiff's and Class Members funds.

104.     Defendants were made expressly aware that the Athena BTM transactions involving Plaintiff and Class Members were the result of a fraudulent scam, however, Defendants failed to refund Plaintiff and Class Members any and all fees Defendants collected from the fraudulent transactions.

105.     Ohio Revised Code Section 2307.61 provides that a property owner may bring a civil action under Section 2307.60 "to recover damages from any person who willfully damages the owner's property or who commits a theft offense, as defined in Section 2913.01 of the Revised Code[.]" Section 2913.01(K)(1) defines "theft offense" as, among other things, receiving stolen property pursuant to R.C. 2913.51.

106.     Defendants knowingly received the proceeds of Plaintiff's and Class Members stolen funds by converting the cash into Bitcoin through its BTM and retaining the significant markup and other fees on the transaction. The funds were stolen property, and Defendants' retention of its profits from the scam constitutes the receipt of stolen property.

107.     Defendants' failure to take steps to prevent such scams, despite clear knowledge that Athena BTMs are exploited by criminals, demonstrates willful and intentional disregard for its customers, including Plaintiff and Class Members. Defendants profited from the stolen funds, which it knew or should have known were the result of illegal activity.

## COUNT FIVE: CONVERSION
### (Against all Defendants)
### *On behalf of Plaintiff and the Class*

108.     Plaintiff alleges and incorporates herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

109.     Plaintiff and Class Members had rightful ownership and possession of the money they deposited into Athena BTMs. Plaintiff and Class Members deposited the funds under the mistaken belief that they would be secure and retrievable.

110.     Without Plaintiff's and Class Members' knowledge or consent, the funds were wrongfully converted into Bitcoin and transferred to an unknown wallet, depriving Plaintiff and Class Members of possession and use of their funds. Athena, as the operator of the BTM, exercised unauthorized control over Plaintiff's and Class Members funds, resulting in their loss.

111.     Defendants were aware, through prior reports and its own public statements, that Athena BTMs were commonly used in fraudulent schemes. Despite this knowledge, Defendants failed to take reasonable measures to prevent fraudulent transactions or to safeguard Plaintiff's and Class Members' funds, thereby contributing to the conversion.

112.     Based on the allegations above, *supra*, Defendants have converted Plaintiff's and Class Members personal property by failing to refund Plaintiff and Class Members all fees Defendants collected from the unlawful and fraudulent transactions that occurred using Athena BTMs.

113.     Defendants were made expressly aware that the BTM transactions involving Plaintiff and Class Members were the result of a fraudulent scam, however, Defendants failed to refund Plaintiff and Class Members any and all fees Defendants collected from the fraudulent transactions.

114.     As a direct and proximate result of Defendants' actions and omissions, Plaintiff and Class Members suffered financial harm, by which their funds were wrongfully converted without Plaintiff's and Class Members' consent.

115.     Despite Plaintiff's and Class Members' efforts to recover the funds and despite Defendants' knowledge of the fraud, Defendants have refused or failed to return Plaintiff's and Class Members' funds or to take any action to reverse the fraudulent transaction.

116.     Based on the allegations above, *supra*, Plaintiff and Class Members are entitled to recovery of compensatory damages in an amount to be determined at trial and punitive damages in an amount to be determined at trial as a result of Defendants' conversion of Plaintiff's and Class Members' property.

## COUNT SIX: UNJUST ENRICHMENT
### (Against All Defendants)
### *On behalf of Plaintiff and the Class*

117.     Plaintiff alleges and incorporates herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

118.     Plaintiff and Class Members were contacted by scammers who had access to Plaintiff's and Class Members personal identifying information and banking details. The scammers convinced Plaintiff and Class Members to withdraw substantial funds from their bank account and deposit it into an Athena BTMs located in Ohio, under the pretense of protecting the funds from fraud.

119.     Relying on the scammers' instructions, Plaintiff and Class Members deposited substantial funds into Athena BTMs. The funds were immediately converted into Bitcoin, which was transferred to a Bitcoin wallet controlled by the scammers. Plaintiff and Class Members were unaware that they would lose access to the funds and receive no recourse after the transaction.

120.     Despite Plaintiff's and Class Members' attempts to recover the stolen funds, Defendants have taken no steps to return the funds in part or in its entirety. Defendants benefited

from the transaction by charging a 38% markup on the Bitcoin sold through the BTMs and by collecting other fees.

121.    Defendants are fully aware that Athena BTMs are regularly exploited by criminals to facilitate scams, money laundering, and other illegal activities. In fact, Athena has publicly acknowledged in its blog "Avoid These Bitcoin Scams" that scammers frequently instruct their victims to use Athena BTMs to purchase Bitcoin as part of fraudulent schemes.

122.    Despite this knowledge, Defendants have failed to implement sufficient safeguards to protect consumers like Plaintiff and Class Members from fraud. Instead, Defendants continue to profit from such transactions, unjustly enriching themselves at the expense of victims of scams.

123.    Under the circumstances, it would be unjust and against equity and good conscience for Defendant to retain the ill-gotten benefits without restitution to Plaintiff and Class Members for the money that Defendants took from them, and disgorgement of the profits obtained by Defendants that are lawfully the proceeds of Plaintiff and Class Members is appropriate.

**COUNT SEVEN: PREMISES LIABILITY**
**(Against the Store Defendants)**
*On Behalf of Plaintiff*

124.    Plaintiff alleges and incorporates herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

125.    Each Store Defendant owns and maintains control over the convenience stores at which the Athena ATMs are located.

126.    Plaintiff entered each store at the implied invitation of the Store Defendants who hold their stores open to customers, and so Plaintiff is considered an invitee under the law.

127. Because Plaintiff is considered an invitee, each Store Defendant owed Plaintiff a duty to warn Plaintiff of latent and hidden dangers of which the Store Defendants had or should have had knowledge.

128. Each Store Defendant had actual knowledge that the Athena BTMs located on its property are commonly used to perpetuate cryptocurrency scams, including against elderly persons such as Plaintiff.

129. It is not obvious upon viewing the Athena BTMs that they are used to perpetuate cryptocurrency scams, including scams against elderly persons such as Plaintiff.

130. Plaintiff was in fact the victim of a cryptocurrency scam facilitated by two Athena BTMs located in each of the Store Defendants' facilities.

131. As a direct and proximate result of the Store Defendants' failure to take reasonable steps to warn Plaintiff that the Athena BTMs are often used to perpetuate cryptocurrency scams, Plaintiff fell victim to a cryptocurrency scam at the Store Defendants' stores, and sustained damages as a result.

132. Each Store Defendant is liable to Plaintiff for her damages proximately resulting from the Store Defendants' failing to take reasonable steps to warn Plaintiff that the Athena BTMs are often used to perpetuate cryptocurrency scams.

133. The Store Defendants' failure to warn Plaintiff of this latent hazard at its stores was a result of intentional and purposeful acts by the Store Defendants not to implement policies and procedures to warn its customers of this hazard. The Store Defendants were not merely negligent in its failure to warn, but consciously made the decision not to warn its customers of this hazard.

## COUNT EIGHT: VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT
### R.C. 1345.01, et seq.
### (Against the Store Defendants)
### *On Behalf of Plaintiff*

134. Plaintiff alleges and incorporates herein every allegation set forth in the preceding paragraphs as though the same were fully rewritten herein.

135. Plaintiff is a "consumer" as that term is defined by R.C. 1345.01(D).

136. Each of the Store Defendants are "suppliers" as that term is defined by R.C. 1345.01(C).

137. The transactions between Plaintiff and each of the Store Defendants are "consumer transactions" because the Store Defendants provided the use of their in-store Athena BTM to Plaintiff for personal, family, or household purposes. R.C. 1345.01(A).

138. Unconscionable acts and practices are prohibited by R.C. 1345.03. R.C. 1345.03(A) generally prohibits suppliers from committing an "unconscionable act or practice" in connection with a consumer transaction. The term "unconscionable" is not defined, but R.C. 1345.03(B) contains a list of "circumstances" that should be considered when determining whether an act or practice is unconscionable.

139. In determining whether an act or practice is unconscionable, the following circumstances shall be taken into consideration: (1) Whether the supplier has knowingly taken advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's physical or mental infirmities, ignorance, illiteracy, or inability to understand the language of an agreement; and (2) Whether the supplier knew at the time the consumer transaction was entered into that the price was substantially in excess of the price at which similar property or services were readily obtainable in similar consumer transactions by like consumers. R.C. 1345.03(B).

140.     The Store Defendants are expressly aware that Athena BTMs are used as vehicles by scammers to defraud the elderly and vulnerable both in this State and elsewhere.

141.     Notwithstanding this fact, the Store Defendants have taken insufficient steps to prevent, intervene, or mitigate those instances in which Athena BTMs are used by scammers, because the Store Defendants derive a substantial revenue from the use of Athena BTMs in its stores.

142.     The Store Defendants could easily implement additional or different protocols or procedures to prevent Athena BTMs from being used by scammers, such protocols which other store owners use to prevent the use of Athena BTMs in its stores in scams.

143.     Store Defendants intentionally choose not to implement these protocols or procedures because doing so would thwart continued use of the Athena BTMs by scammers, and the Store Defendants would not collect the substantial revenue they derive from their relationship with Athena.

144.     The Store Defendants' acts and practices constitute an unconscionable act or practice pursuant to ORC § 1345.03.

145.     Plaintiff suffered substantial monetary losses as a direct result of the Store Defendants intentionally and knowingly failing to take appropriate steps to prevent, intervene, or mitigate instances in which in which persons are victimized by scams perpetrated through Athena BTMs in the Store Defendants' facilities in this State and elsewhere.

146.     As a result of the Store Defendants' violation of the CSPA, Defendants are liable to the Plaintiff for actual damages, statutory damages, reasonable attorney's fees and costs as well as treble damages and non-economic damages.

# PRAYER FOR RELIEF

**WHEREFORE** Plaintiff, S.M., on behalf of herself and each member of the proposed Class, respectfully requests the following relief from Defendants, Athena Bitcoin, Inc., Heights Tobacco, Inc., and Heights Mechanical, Inc., jointly and severally:

A. That the Court declare, adjudge, and decree that this action is a proper class action and certify the proposed class and/or any other appropriate subclasses under F.R.C.P. Rule 23 (b)(1), (b)(2), and/or (b)(3), including the appointment of Plaintiff's counsel as Class Counsel;

B. For an award of damages, including actual, nominal, consequential, and punitive damages, as allowed by law in an amount to be determined;

C. For an award of non-economic damages of up to Five Thousand Dollars ($5,000.00) to Plaintiff for the allegations contained in Count Eight of the Complaint;

D. For treble damages to Plaintiff in an amount to be determined for the allegations contained in Count Eight of the Complaint;

E. That the Court enjoin Defendants, ordering them to cease from unlawful activities;

F. For injunctive relief requested by Plaintiff, including but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and Class Members, including but not limited to an Order:

    a. prohibiting Defendants from engaging in the wrongful and unlawful acts described herein; and

    b. requiring Defendants to implement and maintain measures to intervene, prevent, mitigate, and/or deter financial scams involving its BTMs to protect Plaintiff and Class Members.

G. For prejudgment interest on all amounts awarded, at the prevailing legal rate;

H. For an award of all of Plaintiff's reasonable attorneys' fees and costs against the Defendants for the allegations contained in all Counts of the Complaint; and

I. For all other relief this Court deems just and proper.

Respectfully Submitted,

*/s/ Brian D. Flick*
Marita I. Ramirez (0101882)
Marc E. Dann (0039425)
Brian D. Flick (0081605)
DannLaw
15000 Madison Avenue
Lakewood, OH 44107
(216) 373-0539
(216) 373-0536 e-fax
notices@dannlaw.com

*Attorneys for Plaintiff Shahana Moghal*

## JURY DEMAND

Plaintiff, S.M., hereby respectfully demands a trial by jury on all such claims that may be so tried.

Respectfully Submitted,

*/s/ Brian D. Flick*
Marita I. Ramirez (0101882)
Marc E. Dann (0039425)
Brian D. Flick (0081605)
DannLaw
15000 Madison Avenue
Lakewood, OH 44107
(216) 373-0539
(216) 373-0536 e-fax
notices@dannlaw.com

*Attorneys for Plaintiff S.M.*

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2024, a copy of the foregoing *Plaintiff's First Amended Class Action Complaint* filed with the Clerk of Court who will send notice of the filing to all registered users via the CM/ECF system. I hereby further certify on October 25, 2024 a true and correct copy of the foregoing was sent to the following parties via ordinary U.S. Mail, postage prepared to:

HEIGHTS TOBACCO, INC. d/b/a
DISCOUNT TOBACCO & BEVERAGE
c/o Michael Brady, Reg. Agent
744 Richmond Road
Richmond Heights, Ohio 44143

HEIGHTS MECHANICAL, INC.
c/o Martin J. Keenan, Reg. Agent
870 The Statler Building
Cleveland, Ohio 44101

*/s/ Brian D. Flick*
Marita I. Ramirez (0101882)
Marc E. Dann (0039425)
Brian D. Flick (0081605)
DannLaw
*Counsel for Plaintiff and the Class*